IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANENE MARCUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:22-cv-00132 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| INGRAM BOOK GROUP, LLC, | ) | MAGISTRATE JUDGE NEWBERN |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant Ingram Book Group, LLC's ("Ingram") Motion for Summary Judgment (Doc. No. 24). Plaintiff Janene Marcus ("Marcus") filed a response in opposition (Doc. No. 30) and Ingram filed a reply (Doc. No. 35). For the reasons discussed below, Ingram's motion will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Ingram hired Marcus in 2015. (Doc. No. 27-1 at 10:2-4). At the time of her resignation, Marcus was a Training Quality Supervisor. (*Id.* at 12:24 -14:17). In her role as Training Quality Supervisor, Marcus, who is White, supervised Aree'll Robinson, who is African American. (*Id.* at 15:5-17:10). Prior to May of 2021, Marcus reported to her supervisor, Rob Mitchell, that she was diagnosed with anxiety and ADHD. (Doc. No. 36 ¶ 31). Throughout Robinson's employment at Ingram, she had several performance issues. (Doc. No. 27-1 at 22:16-33:10). Marcus and Mitchell periodically met and discussed Robinson's performance issues. (Doc. No. 36 ¶ 14). Marcus reported to Mitchell on multiple occasions that she felt Robinson was being difficult. (*Id.* ¶ 13). In January of 2021, Marcus requested that Robinson be moved to a different team. (Doc. No. 27-1 at 196:6-197:22). Mitchell responded that he needed to be "careful in dealing with Robinson" because of the "law and requirements that protect against discrimination." (Doc. No. 36 ¶ 12). In

March of 2021, Robinson yelled at Marcus and made derogatory comments toward her which led Marcus to end the meeting prematurely. (Doc. No. 36 ¶ 13). Marcus subsequently requested that Mitchell sit in on future team meetings. (*Id.* ¶ 14).

In June of 2021, Marcus reached out to Ingram's HR business partner, Karen Barber, to report Robinson's continued conduct. (*Id.* ¶ 19). Barber did not respond to Marcus after her initial email. (*Id.*). Marcus informed Mitchell that she was frustrated and believed Barber was not supporting her with respect to Robinson. (*Id.* ¶ 20). Mitchell relayed this conversation to Barber, and Barber did not follow up with Marcus. (*Id.*). Marcus informed Mitchell that her mental health suffered because of Robinson's conduct and again requested Robinson be moved to a different team. (*Id.* ¶ 22; Doc. No. 27-1 at 196:24-197:22). Marcus had weekly meetings with Mitchell about "the toxic environment, how the stress was becoming too much and how badly she was struggling." (Doc. No. 36 ¶ 22).

Robinson's performance issues continued, and Ingram issued a First and Final Warning to Robinson on or about June 24, 2021. (Doc. No. 31 ¶ 2). Robinson resigned on August 2, 2021. (*Id.* ¶ 3). On that same date, Robinson sent an email to Ingram's Customer Care Department stating, among other things:

> Even though I've consistently put my best foot forward for eight years ... as soon as I began to 'backslide' due to the circumstances and environment I was placed in I was immediately frowned upon, embarrassed, and railroaded instead of given an opportunity to correct my behaviors or given an opportunity to change my environment. My actions were a direct reflection of my discomfort and dissatisfaction with the person I was forced to report to. There's only so much disrespect and negligence a person can take before they react. In my case (after attempting to alert others multiple times) I chose to react by taking a back seat, doing the bare minimum, and allowing things to unfold as they may especially since I didn't have the cushion of FMLA to help protect my mental health. When you're told by the person who is supposed to be developing you "Not to take your job too seriously because it isn't comparable to an NBA championship" you tend to lose the excitement and eagerness to come to work daily and do your best… I wasn't allowed to make any significant improvements due to almost everything I ever

> suggested being shut down by my 'supervisor' without thought, I was happier sitting in a cubicle reporting to a supervisor who believed in teamwork and collaboration.

(Doc. No. 27-6 at 5). Ingram removed the email from the server, and Mitchell and Barber met with Marcus to discuss Robinson's email and the effect it had on Marcus's mental and emotional health. (Doc. No. 36 ¶ 28). Mitchell and Barber allowed Marcus to take time off from work and provided her with information about its Employee Assistance Program ("EAP") counseling and leave under the Family and Medical Leave Act ("FMLA"). (Doc. No. 31 ¶¶ 5-6). Marcus resigned on August 16, 2021. (Doc. No. 31 ¶ 9).

Marcus filed this action against Ingram on February 25, 2022, bringing claims of race discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act ("THRA"), and claims of disability discrimination, failure to accommodate, and retaliation under the Americans With Disabilities Act of 1990, as amended ("ADA"). Ingram moved for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

3

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

As an initial matter, the Court finds that Ingram fails to move for summary judgment on Marcus' claims of hostile work environment and retaliatory hostile work environment. While Ingram gives passing reference to hostile work environment claims, it fails to develop any substantive argument based the specific facts of this case, let alone to establish the absence of any material disputes of fact.[1] A defendant cannot put forth a skeletal argument and wait for the Court to do the rest. Indeed, Ingram's statement of undisputed material facts is devoid of any facts

---

[1] To bring a hostile work environment claim, a plaintiff must show "(1) [he] belongs to a protected class; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on race [or national origin]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (internal citations omitted). Additionally, to state a retaliatory hostile work environment claim, a plaintiff must show that: "(1) she engaged in a protected activity; (2) [Defendant] knew this; (3) [Defendant] subjected [Plaintiff] to severe or pervasive retaliatory harassment; and (4) the protected activity is causally connected to the harassment." *Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072, at *9 (6th Cir. 2022). Here, Ingram fails to set forth facts sufficient to negate any element of either claim.

relevant to these claims. *Youngblood v. Bd. of Commissioners of Mahoning Cnty., Ohio*, 847 F. App'x 267, 272 (6th Cir. 2021) ("We have emphasized that a party cannot simply 'mention a possible argument in the most skeletal way'—as Youngblood does here—'leaving the court to ... put flesh on its bones.'"). Accordingly, the Court need not address Marcus's hostile work environment claims.

A. ADA

1. Failure to Accommodate

"'Failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person in the workplace is deemed unlawful discrimination under the ADA." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017) (citing 42 U.S.C. § 12112(b)(5)(A); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)). Because Marcus' claims are premised on Ingram's alleged failure to offer a reasonable accommodation, her claims are analyzed under the following direct-evidence test:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 368 (6th Cir. 2024). Ingram contends that this claim fails because Marcus: (1) did not request an accommodation and (2) and rejected "reasonable" accommodations Ingram offered her. (Doc. No. 25 at 14-15).[2] Whether an employee made a

---

[2] "When accommodation is necessary to enable a plaintiff to perform the essential functions of the position in question, it is the plaintiff's burden to propose an accommodation that is 'objectively reasonable.'" *Scaff v. Gap, Inc.*, 673 F. Supp. 3d 887, 902 (M.D. Tenn. 2023) (quoting *Keith v. Cty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013)). Under the ADA, an employee is "otherwise qualified" for

5

request for accommodation and whether an accommodation is reasonable are both fact-specific inquiries. *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015). Here, the parties point to competing evidence as to whether Marcus requested an accommodation, whether Ingram offered her an accommodation, and the reasonableness of those requested and proposed accommodations. Specifically, Ingram argues that Marcus never requested any form of disability-related accommodation. (Doc. No. 27-1 at 123:18-124:3, 131:5-17, 132:8-10). In response, Marcus points to evidence that she requested that Robinson be moved to a different team. (Doc. No. 27-1 at 196:6-197:22). Marcus also points to evidence that she informed Mitchell on multiple occasions that her mental health was suffering because of Robinson's conduct and that she told Barber that she felt "discriminated against and completely ignored." (Doc. No. 36 ¶¶ 22, 29). Marcus also points to evidence that she informed Mitchell that "the stress was becoming too much and that she was struggling mentally," but that "Mitchell took no action despite that Robinson's conduct continually escalated in both severity and frequency." (Doc. No. 30 at 9). Marcus also argues that starting in May of 2021, she met with Mitchell consistently and informed him that "her mental health was suffering and that she was not okay." (Doc. No. 36 ¶ 17). The Court finds that viewing the facts in the light most favorable to Marcus, she has created a genuine dispute as to whether she requested accommodations. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 564 (6th Cir. 2022) ("'We have generally given plaintiffs some flexibility in how they request an accommodation.' Just as an employee does not need to use 'magic words' to inform her employer that she is disabled, the employee does not need to explicitly use the word 'accommodation.'…

---

their position if they can perform the essential functions of their job with or without a reasonable accommodation. 42 U.S.C. § 12111(8). An employee ceases to be qualified for a job under the ADA if they "reject[] a reasonable accommodation." 29 C.F.R. § 1630.9(d).

Additionally, 'an employee's initial request does not need to identify the perfect accommodation from the start.'").

Ingram also argues that Marcus "forfeited her status as a qualified individual under the ADA…when she rejected its offers of reasonable accommodation." (Doc. No. 25 at 15). Marcus disputes that she declined Ingram's offers of EAP counseling or FMLA leave. (Doc. No. 31 ¶ 7). Specifically, Marcus argues that she emailed Barber that she was "not opposed to the idea of FMLA" and never rejected FMLA leave and attempted to engage in Ingram's EAP services. (*Id.*).

Accordingly, Ingram has failed to establish the absence of material disputes of fact as to the failure to accommodate claim, and Ingram's motion for summary judgment will be denied as to that claim.

2. Discrimination

Marcus does not point to direct evidence in support of her disability discrimination claim.[3] Where a plaintiff relies on indirect, circumstantial evidence to support her claims of discrimination and retaliation, the court will "apply the three-part burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668(1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089,

---

[3] "ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (internal citation omitted). "Direct evidence of disability discrimination 'does not require the fact finder to draw any inferences [to conclude] that the disability was at least a motivating factor.'" *Id.* (internal citation omitted). "Whether a plaintiff's evidence may be properly categorized as direct or circumstantial is of importance, because a direct-evidence claim is removed from the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346–47 (6th Cir. 2012). "Instead, the plaintiff's case-in-chief is met, and 'the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.'" *Id*. (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). Additionally, when a plaintiff does not rely on direct evidence, the "[t] *McDonnell Douglas* paradigm is used… to evaluate a plaintiff's claim that his discharge from employment was discriminatory." *Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 334 (6th Cir. 2013).

7

67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775-76 (6th Cir. 2016).

To establish a *prima facie* case of disability discrimination by circumstantial evidence, Marcus must show that (1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) Ingram knew or had reason to know of her disability; and (5) she was replaced or her position remained open while the employer sought other applicants. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Under the ADA, the plaintiff's disability must be a "but for" cause of the adverse employment action. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). Ingram argues Marcus cannot establish a disability discrimination claim under the ADA because: (a) she rejected Ingrams offers of reasonable accommodations; (b) never suffered adverse employment action because she resigned; and (c) was never replaced or treated differently.

a. Offers of Reasonable Accommodations

Ingram argues that Marcus is not an "otherwise qualified individual" under the ADA because she rejected Ingram's accommodation offers. (Doc. No. 25 at 16). As set forth above, Ingram has failed to establish the absence of a genuine dispute as to whether Marcus declined its accommodation offers and, thus, whether she is an "otherwise qualified individual" under the ADA.

b. Adverse Action

Ingram argues that Marcus cannot establish that she suffered an adverse action because she resigned. In her response, Marcus contends that she was constructively discharged. It is well-established that constructive discharge is an adverse employment action. *See e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014). A constructive discharge occurs when the employer

8

deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *See id*. at 727. To establish a claim for constructive discharge, Marcus must show: (1) Ingram deliberately created working conditions that a reasonable person would perceive as intolerable, (2) Ingram did so to force Marcus to quit, and (3) Marcus quit. *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 373 (6th Cir. 2024).

Ingram argues that following Robinson's unauthorized email and resignation, it allowed Marcus to take time off work and offered Plaintiff EAP counseling or FMLA leave in order to enable her to return to work. (Doc. No. 25 at 19). Ingram claims that while Marcus may have been "subjectively upset about Ms. Robinson's unauthorized resignation email, [Marcus] has failed to show that her 'working conditions' were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" (Doc. No. 25 at 20).

In response, Marcus argues that she was subjected to constant harassment and humiliation by Robinson and her supervisors from March to August of 2021. (Doc. No. 30 at 8). Marcus points to evidence that she reported that Robinson harassed her, used abusive language towards her, and made derogatory statements during their meetings. (Doc. No. 30 at 8-9). Marcus also points to evidence that she informed Mitchell on several occasions that she was struggling mentally and that "the stress was becoming too much." (Doc. No. 36 ¶ 22). Additionally, Marcus points to evidence that Mitchell took no action "despite that Robinson's conduct continually escalated in both severity and frequency" and Marcus's requests that Robinson be moved to another team. (Doc. No. 30 at 9). Marcus also argues that "she did not know how she could move forward because she was so devastated and humiliated." (Doc. No. 36 ¶ 28). There is also evidence that, following Robinson's email about Marcus, Ingram offered to explore whether severance would be option for Marcus, in addition to offering her counseling and FMLA leave in acknowledgment of Marcus feeling like

9

she could not go on. (Doc. No. 27-3 at PageID #227). Marcus contends that she was "pressured into accepting unpaid FMLA leave as one of the only alternatives to her supervisors' continued lack of action which led to [her] dire mental health circumstances" and that Ingram's continued inaction "all were calculated to force Marcus to resign due to the intolerable work conditions." (Doc. No. 30 at 8-9). Viewing the facts in the light most favorable to Marcus, the Court finds that a jury could conclude that a reasonable person in Marcus's situation would feel compelled to resign.

      c. Replaced by Someone Outside of the Class

Ingram argues that Marcus cannot establish the fifth element of her claim because Ingram did not replace her. In support of its argument, Ingram relies on a declaration from Ingram's Vice President of Customer Care, Nina McClain. (Doc. No. 27-7). McClain states that Marcus "was never replaced by anyone else. Rather, after [Marcus] resigned, her duties as IBG's former Supervisor of Customer Care Training and Quality were then spread among and assumed by other IBG employees in addition to their own duties." (*Id.* at 2). However, the foregoing evidence neither negates this element of Marcus's *prima facie* case nor shows an absence of evidence to support it because an employee "is replaced ... when another employee is hired or reassigned to perform the plaintiff's duties." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 2010). Because Ingram has failed to establish the absence of material facts in dispute as to this claim, summary judgement is inappropriate.

 3. <u>Retaliation</u>

To establish a *prima facie* case of ADA retaliation under the indirect evidence test, a plaintiff must show that "(1) [she] engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was

10

a causal connection between the protected activity and the adverse action." *Morrissey v. Laurel Health Care Co.,* 946 F.3d 292, 304 (6th Cir. 2019) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).

Here, Ingram asserts that Marcus cannot establish the first and third elements of her ADA retaliation claim because (1) Marcus didn't advise Ingram of her disability or request an accommodation for a disability; and because (2) Ingram did not terminate or discipline her. The Court has already determined there is a material dispute of fact as to whether Ingram took an adverse action against her. And as to the first element, Marcus points to evidence that Mitchell was aware of Marcus's disabilities and that she had informed him on several occasions prior to May of 2021 that she had both anxiety and ADHD. (Doc. No. 36 ¶ 31). Indeed, there is evidence that Marcus had weekly meetings with her supervisor that were dominated by discussions about how badly she was struggling with her mental health. (Doc. No. 36 ¶¶ 22, 17). Accordingly, the Court finds that summary judgment is inappropriate on this claim.

**B. Title VII**

   1. Discrimination

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021).[4] Here, the parties agree that Marcus has asserted a reverse discrimination claim. "Where a member of the majority group claims

---

[4] "The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Austin v. Alexander*, 439 F. Supp. 3d 1019, 1024 n.2 (M.D. Tenn. 2020) (quoting *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008)).

discrimination … the Sixth Circuit has modified the first and fourth prongs of the analysis." *Carr v. Metro. Govt. of Nashville and Davidson Cnty., Tennessee*, No. 3:16-CV-00002, 2018 WL 3416695, at *2 (M.D. Tenn. July 13, 2018) (internal citation omitted). To meet the first prong, a plaintiff must "demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* (internal citation omitted). To meet the fourth prong, a plaintiff "must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Id.* (internal citation omitted).

Ingram contends that summary judgment is appropriate because Marcus cannot establish the first, second, and fourth elements of her claim. The Court has already determined there is a material dispute of fact as to whether Ingram subjected her to an adverse employment action. The Court will consider Ingram's arguments as to the first and fourth elements in turn.[5]

    a. Background circumstances

"Background circumstances can consist of the following: statistical evidence or employment policies showing a history of unlawful consideration of race by the employer; evidence that the person responsible for the employment decision was a minority; or evidence of ongoing racial tension in the workplace." *Garner v. Fuyao Glass Am.*, No. 3:21-CV-051, 2023 WL 7018791, at *6 (S.D. Ohio 2023). In support of its argument as to the first element, Ingram points to Marcus's deposition testimony that Robinson never said anything to Marcus that Marcus

---

[5] Here, Marcus's supervisor, Mitchell, testified at his deposition that Ingram disciplines employees differently based on race. (Doc. No. 27-5 at 58:6-60:23). The Court finds that Mitchell's remarks are relevant direct evidence of discriminatory intent. *See Kostic v. United Parcel Serv., Inc.*, 532 F. Supp. 3d 513, 527 (M.D. Tenn. 2021) ("Discriminatory remarks by a person who played a meaningful role in the challenged decision, or who had the ability to influence personnel decisions, are relevant direct evidence of discrimination."). Nonetheless, the Court also addresses the circumstantial evidence in support of Marcus's race discrimination claim under the *McDonnell-Douglas* framework.

perceived as racist. (Doc. No. 27-1 at 17:2-10, 85:14-16). Ingram also asserts that when Marcus complained about Robinson, Ingram issued a final warning to Robinson and promptly removed Robinson's resignation email, but did not remove Marcus's response email. (Doc. No. 25 at 9). In addition, Ingram claims that Mitchell and Barber "did everything they could to help and support [Marcus] and to enable her to return to work, including offering her assistance in the form of time off, EAP counseling, and potential FMLA leave." (*Id.*).

Ingram fails to explain how the absence of race-related comments by Robinson, Marcus's subordinate, have any bearing on whether Ingram, Marcus's employer, engaged in race discrimination against Marcus. Moreover, Ingram fails to support the foregoing with legal authority sufficient to defeat a race discrimination claim. Further, it is not apparent to the Court how the foregoing evidence is material to Ingram's background circumstances. Accordingly, the Court finds that the facts Ingram relies on fail to show an absence of evidence as to the first element of Marcus's reverse discrimination claim. As such, the Court need not reach Marcus's response regarding this element. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion.") (internal citation omitted).

    b. Similarly Situated Individuals

Ingram also argues that Marcus was not treated differently than any similarly situated non-Caucasian. Ingram and Marcus both point to evidence that Ingram permitted Taysha Adams, an African-American supervisor, to clean out her office, while refusing Marcus the same. (Doc. No. 36 ¶ 32). Marcus also points to evidence that Ingram employed a different disciplinary process for individuals of different races. (Doc. No. 36 ¶ 12). Viewing the facts in the light most favorable to

Marcus, the Court finds that Ingram has failed to meet its initial burden of showing an absence of evidence that Marcus was treated differently than any similarly-situated non-Caucasian. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). As a result, Ingram's motion for summary judgment will be denied as to Marcus's race discrimination claim.

2. Retaliation

To establish retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) the defendant was aware of the protected activity; (3) the defendant took an action that was materially adverse to the plaintiff; and (4) there is a causal connection between the protected activity and the defendant's adverse action. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.320d 333, 343-44 (6th Cir. 2021).

Ingram contends that Marcus cannot show she engaged in conduct protected under Title VII or that it took an action that was materially adverse to her. The Court has already found there are material disputes of fact as to the whether Ingram took an adverse action against Marcus. Ingram submits Marcus did not engage in protected activity under Title VII because her reports about Robinson were not based on Robinson's race. The Court finds this argument unpersuasive because it is unsupported by any legal authority. Accordingly, summary judgment will not be granted as to the Title VII retaliation claim.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

14

Case 3:22-cv-00132    Document 39    Filed 03/19/24    Page 14 of 14 PageID #: 484